# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GREGORY MARSHALL | : | |
| Plaintiff | : | |
| v. | : | Civil Action No. RWT 12-985 |
| FRANK BISHOP, Warden | : | |
| LT. RODNEY LIKIN, Housing Unit Manager | | |
| MICHAEL P. THOMAS, Chief of Security | : | |
| BARBARA NEWTON, Agency Contract Operation Manager | : | |
| Defendants | : | |

## MEMORANDUM OPINION

On April 4, 2012, Plaintiff Gregory Marshall, presently confined at the Western Correctional Institution in Cumberland, Maryland ("WCI"), filed a civil rights complaint seeking emergency injunctive relief mandating treatment for (1) mental illness and (2) prostate cancer screening at Bon Secours Hospital. Although Marshall has three previous "strikes"[1] and generally cannot file a civil case in this court absent prepayment of the full civil filing fee,[2] given the nature of the claim counsel for the Maryland Attorney General was ordered to respond to Marshall's injunctive relief request.[3] ECF No. 3. Counsel has done so (ECF No. 13), the court

---

[1] *See Marshall v. Lanham*, Civil Action No. AW-97-990 (D. Md. 1997); *Marshall v. Correctional Center of Howard County*, Civil Action No. AW-97-2536 (D. Md. 1997); and *Marshall v. Kemmerer*. Civil Action No. AW-02-2133 (D. Md. 2003).

[2] *See* 28 U.S.C. 1915 (g).

[3] Marshall's interlocutory appeal complaining that the undersigned did not grant injunctive relief mandating he be immediately ransferred to a different facility for medical care, awarded "default judgment," and granted leave to proceed without prepayment of filing fees was dismissed by the United States Court of Appeals for the Fourth Circuit on November 28, 2012. ECF Nos. 14 and 28. The mandate issued on December 20, 2012.

has indicated the Response shall be treated as a dispositive motion[4] (ECF No. 19), and Marshall has filed an opposition to the Response.[5] ECF Nos. 21, 22 and 23.[6]

As noted in the April 19, 2012 Order requiring response, analysis of the instant case requires reiteration of determinations made in *Marshall v. Joubert, et al.,* Civil Action No. RWT-11-3189 (D. Md.). On November 30, 2011, the undersigned dismissed elements of the complaint in RWT-11-3189, but required a response from the sole remaining defendant, the named health care provider, regarding Marshall's claim of denial of health care for possible prostate cancer. In that case, Marshall sought injunctive relief mandating specialized testing and medical care, claiming to suffer bleeding from the penis and pain upon urination.

Although Marshall alleged his appointment at Bon Secours Hospital on November 1, 2011, was cancelled due to his depression, the record showed otherwise. Marshall was transported to the urology clinic at Bon Secours Hospital on November 1, 2011, for

---

[4] For reasons apparent herein, service of process was not attempted on the named defendants, a deficiency that need not be cured.

[5] Marshall's requests for appointment of counsel (ECF No. 1 at 5) remains pending. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[5] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*. Having considered Plaintiff's filings, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the Court do not appear unduly complicated. Therefore, there are no exceptional circumstances at this time that would warrant the appointment of an attorney to represent Plaintiff under § 1915(e)(1).

[6] Marshall seeks to compel prison staff to turn over all of his medical records, including his mental health records. Most if not all of his medical and mental health records preceeding May of 2012 have been provided to this Court as exhibits in Marshall's prior cases, and are not needed to address the issues presented in the instant case. Based on prior mental health records, this Court has no difficulty in accepting that among his mental health diagnoses, Marshall exhibits Axis II personality disorders as defined in the Diagnostic and Statistical Manyual of Mental Disorders published by the American Psychiatric Association.

evaluation due to a persistently elevated PSA level.[7] Once inside the urology clinic, Marshall fell to the floor in an apparent "seizure" and spit blood. He was admitted to the Emergency Department at Bon Secours where he reported that he had swallowed two razor blades that morning, but refused to answer any other questions. Marshall refused to consent to an endoscopy to be performed in order to find the swallowed razor blades. Thereafter, Marshall was discharged back to WCI for continued care.

On November 8, 2011, prison personnel deemed Marshall to be a security risk to himself and others when scheduled to attend outside medical visits due to his repeatedly swallowing razor blades and episodes of hematemesis (spitting blood out of his mouth). Therefore, it was determined that he would not be sent on medical visits outside WCI absent emergency. Marshall was informed of this decision on November 17, 2011. He sued Dr. Ava Joubert, claiming she refused to reschedule an appointment for further PSA testing at Bon Secours. The undersigned found, however, that the decision to cancel a follow-up appointment at Bon Secours was dictated by security, not medical, considerations. The undersigned also found that while Marshall still received care and treatment at WCI for urinary discomfort, he has been noncompliant in assisting medical personnel who were attempting to determine whether he had a urinary tract infection or other condition requiring treatment.[8] *Id.*, Exhibit I (Medical Record, December 12, 2011) and Exhibit J (Medical Record, December 22, 2011). On December 21, 2011, WCI staff prescribed Bactrim DS for the treatment of Plaintiff s dysuria.[9] In granting summary judgment to Dr. Joubert, the undersigned found that Joubert sought to provide outside consultation and

---

[7] Evaluation was to include a needle biopsy and transrectal ultrasound.

[8] While men with prostate cancer may have elevated levels of PSA, many noncancerous conditions can also increase a man's PSA level, including enlargement or inflammation of the prostate. *See* http://www.bing.com/health/article/mayo-MAMY00180/PSA-test?q=psa+screening&qpvt=PSA+screening.

[9] Dysuria is painful or difficult urination most commonly due to bacterial infection of the urinary tract causing inflammation of the bladder or kidney. *See* http://www.medterms.com/script/main/art.asp?articlekey=3163.

testing to determine whether Marshall does in fact have prostate cancer, and that Marshall's actions at the hospital led to a finding that he is a security risk who cannot be transported for outside testing at this time. In balancing these findings, a third factor mitigated against granting the relief Marshall requests: to wit, Marshall's refusal to comply with treatment currently available to diagnose and cure any underlying infection that may be the cause of his symptoms. Summary judgment was entered on behalf of the medical Defendant and the case was closed. *Id.,* ECF Nos. 15 and 16.[10]

In the instant case, Marshall named prison personnel as the individuals allegedly responsible for his high security risk designation and argued that but for ineffective and/or non-existent mental health treatment at WCI, his mental condition might improve to the point where his treatment at Bon Secours Hospital could take place without undue risk to himself or others. Marshall argued he needed additional mental health treatment at WCI or transportation to Patuxent Institution for such care, so that once mental balance is restored he could be taken to Bon Secours for necessary diagnostics and any required medical care.

In denying injunctive relief, the Court accepted that Marshall had symptoms of some type of urinary disorder that may (or may not) be linked to prostate disease, and recognized that Marshall suffers from long-term mental illness. The Court also noted Marshall's long-standing history of swallowing objects such as razor blades and otherwise inflicting harm on himself in order to obtain placement in mental health programs operating within various Maryland prisons, and his frequent refusal to avail himself of the mental health treatment offered at other prison

---

[10] Additional cases have examined the adequacy of mental health treatment provided to Marshall. Among the most recent is *Marshall v. Weber, et al.*, Civil Action No. RWT-11-2755 (D. Md.). On December 17, 2012, the undersigned granted summary judgment in favor of Defendants based on findings that Marshall had received adequate medical and mental health care and merely disagreed with his course of treatments. *Id.,* Memorandum Opinion, ECF No. 61.

facilities, in the hope of manipulating his housing assignments.[11]  The undersigned also noted that Marshall had refused to comply with antibiotic treatment that might uncover the cause of his elevated PSA and has shunned the mental health services extended to him at WCI and other prisons.

Having made these determinations with regard to Marshall's injunctive relief requests, the Court must now determine final disposition of this case.  The Response shall be construed as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 554 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id*. at 557-558  (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).   "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).   In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true"

---

[11] *See, e.g., Marshall v. Friend, et al.,* Civil Action No. CCB-09-2269 (D. Md.); *Marshall v. Trenum, et al*., JFM-09-1309 (D. Md.);  *Marshall v. Weber,* CCB-09- 2927 (D. Md.).  Indeed, in In *Marshall v. Lynn, et al.,* Civil Action No. JFM-07-2711 (D. Md.) (consolidated with JFM-08-221 (D. Md.)), the court found Marshall had received adequate medical and mental health treatment despite his intentional efforts to thwart same by inflicting injury on himself.  The court noted there that:

> [Plaintiff's] attempts to manipulate prison classification staff and psychologists by harming himself  in order to merit long-term commitment to CMHC-J may in fact be a facet of his mental illness.  Medical experts, however, have documented why such commitment is not necessary and have concluded that plaintiff can be housed elsewhere if compliant with his medication regimen.  Nothing more is constitutionally required.  Further, no evidence exists to support plaintiff's claims of retaliation and conspiracy.

and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *Takacs v. Fiore*, 473 F.Supp.2d 647, 651 (D. Md. 2007).

A prisoner is entitled to receive reasonable treatment for his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976). Failure to provide treatment, when indicating a "deliberate indifference to serious medical needs of prisoners" results in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth Amendment." *Id*. at 104. Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. *See generally, Farmer v. Brennan*, 511 U.S. 825 (1994); *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995). An inmate also has an Eighth Amendment right to be free from deliberate indifference to serious psychiatric needs. *See Comstock v. McCray*, 273 F.3d 693, 702 (6th Cir. 2001). There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). An inmate is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id*. The *Bowring* court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id*. at 48. If a prisoner shows that he was denied psychological or psychiatric treatment, he must

also demonstrate that the failure or refusal to provide treatment constituted deliberate indifference on behalf of medical personnel.

From prior litigation, the Court is aware that a psychological Behavioral Management Plan ("BMP") was developed by prison staff in late September of 2007 to address Marshall's pattern of disruptive behavior. *See Marshall v. Friend, et al.,* Civil Action No. CCB-09-2269 (D. Md.), Memorandum of June 15, 2010, ECF No. 33 at 4. Plan developers indicated that Marshall "has a history of displaying self-mutilation behavior that has been at times difficult to manage within the correctional setting." *Id.,* Paper No. 30, Exhibit 2 at 1. Staff also noted:

> [Marshall's] past also includes a significant history of malingering behavior for secondary gain directed toward receiving special concessions and privileges from the correctional system. In addition, his pattern of behavior is an attempt to avoid responsibility for inappropriate behavior while meeting expected behavior goals.
>
> Inmate Marshall's self-mutilation and disruptive behavior is well known throughout the Maryland Division of Correction system. A review of the charts indicates that inmate Marshall is a 43 year old…African American male serving 30 years for second degree murder. He began self-mutilation behavior at a reported age of 13. He has a long psychiatric history of being hospitalized in state hospitals prior to incarceration, as well as multiple placements in a Correctional mental health setting while incarcerated….His adjustment history is poor with 156 pages of infractions listed….

*Id.,* Paper No. 30, Exhibit 2 at 1.

The plan turned on minimizing Marshall's manipulation of prison staff by limiting the number of staff who come into contact with him. *Id.* In part, the plan noted:

> In the event that inmate Marshall is observed participating in self-mutilation, he will be treated by medical staff in the housing unit then housed in a contingency cell. The exception to this would be if the nature of inmate Marshall's self-harm warrants an escort to the medical department for treatment; where he would then return to the housing unit in a contingency cell. In the event that inmate Marshall's behavior becomes excessively disruptive, and for safety reasons, housing in SOH [Special Observation Housing] is available.
>
> Upon placement in SOH, both Lt. Friend and Mr. Weber will manage inmate Marshall's case while consulting the administration and medical department.

> Inmate Marshall will not receive privileges upon his request, in response to threats of self harm, or in response to "make deals" with the promise of complying with behavior that is already expected of inmates. Inmate Marshall will earn privileges that will be granted by the institution (i.e. Housing Unit Lt. or Housing Unit Psychology Associate), only after displaying appropriate institutional behavior. This behavior may include but is not limited to the following: inmate Marshall must not be on disciplinary segregation, must not be housed in SOH, must be 30 days infraction free, and must [refrain] from self harm for a minimum of 30 days.

Paper No. 30, Exhibit 1 at 2.

In addition to the BMP, Marshall has had access to mental health evaluation and treatment since his 2007 transfer to WCI.[12] Based on such evaluation, staff psychiatrists Dr. Vincent Siracusano and Dr. Stephen Schellhase have concluded that Marshall is malingering rather than suffering from any true mental health condition. *Id.,* Paper No. 17, Exhibits 1 and 2; *see also Marshall v. Weber, et* al., Civil Action No. CCB-09-2927 (D. Md.), Paper No. 4, Exhibit 1, Declaration of Margaret Reed, and Exhibit 3 at 6. On June 17, 2009, Dr. Schellhase concluded that Marshall malingers mental illness for secondary gain, and did not at that time require psychotropic medication. *Marshall v. Weber, et al.*, Civil Action No. CCB-09-2927 (D. Md.), Paper No. 4, Exhibit 1. Defendant Weber met with, or attempted to meet with, Marshall throughout 2009 and 2010, to assess his mental condition. *Id.,* ECF No. 33 at 6. In

---

[12]The court is aware that Marshall deems the treatment rendered within the Division of Correction inappropriate; indeed, he recently has litigated such claims. In *Marshall v. Lynn, et al.,* Civil Action No. JFM-07-2711 (D. Md.) (consolidated with JFM-08-221 (D. Md.)), the court found Marshall had received adequate medical and mental health treatment despite his intentional efforts to thwart same by inflicting injury on himself. The court noted there that:

> [Plaintiff's] attempts to manipulate prison classification staff and psychologists by harming himself in order to merit long-term commitment to CMHC-J may in fact be a facet of his mental illness. Medical experts, however, have documented why such commitment is not necessary and have concluded that plaintiff can be housed elsewhere if compliant with his medication regimen. Nothing more is constitutionally required. Further, no evidence exists to support plaintiff's claims of retaliation and conspiracy.

*Id.*, Paper No. 29 at 9.

*Marshall v. Trenum, et al.*, JFM-09-1309 (D. Md.), the Court concluded that WCI mental health experts were attempting to control Marshall's conduct using behavior modification, rather than psychotropic medications.

Turning to the instant lawsuit, the Court finds that prison and medical staff have continued to assess whether Marshall can conform his conduct to allow his transportation to Bon Secours Hospital for prostate testing. As of April 10, 2012, members of a multidisciplinary patient care conference concluded that Marshall continues to remain a threat to public safety and "caution is still advised in seeking medical consultation with the [u]rologist." ECF No. 13, Ex. 1, p. 21. The notation indicates that Marshall "relates 'no changes' in condition" and that "recent labs from March 2012…are reportedly unremarkable." *Id*. Chronic complaints of bloody semen were not substantiated by laboratory results. *Id.,* p. 24.

For many years, Marshall has been provided ongoing mental health treatment, including behavior management. While his behavior has improved in the prison setting, he "acts out" by swallowing foreign objects to cause bleeding when transported outside. The Court finds that prison health care providers are willing to refer Marshall to an outside specialist for prostate testing but only if Marshall is able to conform his conduct in a manner that will protect the public to whom he will be exposed during his visit.

The ball is in Marshall's court. It is up to him to convince prison security and medical staff that he will refrain from misconduct in order to obtain testing and treatment at Bon Secours

Hospital. Marshall is a prolific litigator, and the Court has little doubt that the issue presented here will come before it again. Here, however, dismissal is appropriate, and by separate Order shall be entered forthwith.

May 7, 2013                                                      /s/
                                                        ROGER W. TITUS
                                                  UNITED STATES DISTRICT JUDGE